MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: LI YU
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2734
Facsimile: (212) 637-2687
Email: li.yu@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                   :        ECF CASE
UNITED STATES OF AMERICA,          :
                                   :
           Plaintiff,              :        COMPLAINT
                                   :
      v.                           :        08 Civ. 7621 (LMS)
                                   :
LINDA WOODY, QUINCY WOODY, JOHN    :
DOES 1-10,                         :
                                   :
           Defendants.             :
- - - - - - - - - - - - - - - - - -x

       Plaintiff, United States of America ("the United

States" or "the Government"), by and through its attorney,

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its complaint herein alleges upon

information and belief as follows:

<u>INTRODUCTION</u>

       1.  This is an action brought by the United States to

foreclose a mortgage on property located in the Town of Maybrook,

County of Orange and State of New York, within the Southern

District of New York.

<u>JURISDICTION AND VENUE</u>

2.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345.

3.   Venue is proper pursuant to 28 U.S.C. § 1391(b), in that the property is located within the Southern District of New York.

<u>THE PARTIES</u>

4.   The United States is a Sovereign.  The Rural Housing Service ("RHS")is an agency of the United States, within the United States Department of Agriculture ("USDA").  RHS administers a number of rural housing programs, including making direct loans to low and moderate income households for the purchase, construction or rehabilitation of single family homes located in rural areas.  To make the loans affordable they are subsidized by RHS to varying degrees depending on household income.

5. Linda Woody and Quincy Woody (the "Borrowers") reside at 420 Rakov Road, Maybrook, New York (the "Mortgaged Property").

6.   John Does Nos. 1-10 are persons or parties that may be in possession of, having, or claiming an interest in or lien on the Mortgaged Property.

<u>FACTS AND CLAIMS OF RELIEF</u>

7.   On or about December 21, 1992, the Borrowers executed and delivered a secured promissory note to RHS in the principal amount of $88,900.00, plus interest at the rate of 7.75% annually ("the Note").  A true and correct copy of the Note is attached hereto as Exhibit A.

8.   On December 21, 1992, to secure payment of the Note, Borrower also executed and delivered a Real Estate Mortgage ("the Mortgage") with the Note in favor of RHS covering the Mortgaged Property, described therein.  The Mortgage was recorded on December 21, 1992, in the Orange County Clerk's Office, in Liber No. 4547 of Mortgages at Page 79.  A true copy of the Mortgage is attached hereto as Exhibit B.

9.   On December 21, 1992, RHS and Borrowers entered into a Subsidy Repayment Agreement (the "Subsidy Repayment Agreement").  Pursuant to 42 U.S.C. § 1490a and the terms of the Mortgage, any interest credit assistance is subject to recapture upon disposition of the property.  The amount subject to recapture is $2,100.00.  A true and correct copy of the Subsidy Repayment Agreement is attached hereto as Exhibit C.

10.   The Mortgage, the Note, and the Payment Assistance Agreement required Borrower to pay, when due, all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the Mortgaged Property, and to keep the

3

Mortgaged Property insured.  The Mortgage further provided that in the event of a default in making such payments, the Government was authorized to make such payments as advances for the account. Pursuant to the terms of the Mortgage, such advances together with the interest thereon are immediately due and payable by Borrower to the Government, without demand, and are secured by the Mortgage.

11.  On or about May 28, 1997, the Borrowers filed for Chapter 7 bankruptcy protection.

12.  On or about July 7, 1997, a Reaffirmation Agreement was executed and filed with the bankruptcy cour prior to the discharge issuance.  Under the Reaffirmation Agreement, the Borrowers acknowledged liability for, reaffirmed and promised to pay the total unpaid balance of the Note.  A true and correct copy of the Reaffirmation Agreement is attached hereto as Exhibit D.

13.  On or about August 27, 1997, a discharge was granted to the Borrowers by the bankruptcy court.  A true and correct copy of the discharge is attached hereto as Exhibit E.

14.  On or about August 18, 2000, the Borrowers executed and delivered a Reamortization Agreement with an effective date of July 21, 2000 (the "2000 Reamortization Agreement") to RHS.  The 2000 Reamortization Agreement reamortized the Borrowers' outstanding debt under the Note,

including interest and advances through July 21, 2000, in the
principal amount of $92,931.11.  The 2000 Reamortization
Agreement did not affect any of the terms of the Note or Mortgage
other than the payment schedule.  A true and correct copy of the
2000 Reamortization Agreement is attached hereto as Exhibit F.

      15.  On or about April 2, 2001, the Borrowers applied
for and were approved for moratorium assistance with an effective
date of April 21, 2001 (the "2001 Moratorium Approval").  The
2001 Moratorium Approval did not affect any of the terms of the
Note or Mortgage other than the payment schedule.  A true and
correct copy of the 2001 Moratorium Approval is attached hereto
as Exhibit G.

      16.  On or about October 26, 2001, the 2001 Moratorium
Approval was terminated when the Borrowers reported a change in
circumstances which no longer qualified them for continued
moratorium assistance.  A true and correct copy of the October
26, 2001 Moratorium cancellation notice is attached hereto as
Exhibit H.

      17.  On or about January 4, 2002, the Borrowers
executed and delivered a second Reamortization Agreement with an
effective date of December 21, 2001 (the "2001 Reamortization
Agreement") to RHS.  The 2001 Reamortization Agreement
reamortized the Borrowers' outstanding debt under the Note,
including interest and advances through December 21, 2001, in the

principal amount of $94,071.36.  The 2001 Reamortization
Agreement did not affect any of the terms of the Note or Mortgage
other than the payment schedule.  A true and correct copy of the
2001 Reamortization Agreement is attached hereto as Exhibit I.

18.  On or about June 4, 2003, the Borrowers, for the
second time, applied for and were approved for moratorium
assistance with an effective date of June 21, 2003 (the "2003
Moratorium Approval").  The 2003 Moratorium Approval did not
affect any of the terms of the Note or Mortgage other than the
payment schedule.  A true and correct copy of the 2003 Moratorium
Approval is attached hereto as Exhibit J.

19.  On or about November 25, 2003, the 2003 Moratorium
Approval was terminated when the Borrowers failed to submit
information needed to determine if they continued to qualify for
moratorium assistance.  A true and correct copy of the November
25, 2003 Moratorium cancellation notice is attached hereto as
Exhibit K.

20.  On or about April 6, 2005, the Borrowers executed
and delivered a third Reamortization Agreement with an effective
date of March 21, 2005 (the "2005 Reamortization Agreement") to
RHS.  The 2005 Reamortization Agreement reamortized the
Borrowers' outstanding debt under the Note, including interest
and advances through March 21, 2005, in the principal amount of
$118,186.02.  The 2005 Reamortization Agreement did not affect

6

any of the terms of the Note or Mortgage other than the payment schedule.  A true and correct copy of the 2005 Reamortization Agreement is attached hereto as Exhibit L.

21.  On December 2, 2005, RHS sent a letter to the Borrowers confirming the terms of a delinquency workout agreement ("the Delinquency Workout Agreement").  The letter indicated that as of December 2, 2005, the Borrowers were $2,084.37 past due on payments on their account.  Under the Delinquency Workout Agreement, Borrowers were obligated to make both their regular monthly payment plus an additional payment of $86.85 each month, beginning December 21, 2005, for a period of twenty four months. Under the Delinquency Workout Agreement, failure to make payment on this schedule automatically voided the agreement.  A true and correct copy of the Delinquency Workout Agreement is attached hereto as Exhibit M.

22.  In February, 2006, the Borrowers failed to make the required payments under the Delinquency Workout Agreement. Consequently, the Delinquency Workout Agreement was automatically terminated by RHS.

23.  On or about November 13, 2006, a notice of default and demand letters were sent to the Borrowers.  In those letters, RHS advised the Borrowers that due to their continued failure to make the required mortgage payments, and in accordance with the terms of the Mortgage and Note, the indebtedness due on the Note

was accelerated and deemed to be immediately due and payable.
True and correct copies of the November 13, 2006 letters are
attached hereto as Exhibit N.

24.  On or about December 26, 2006, RHS reinstated the
Borrowers account and ceased foreclosure action due to the
Borrowers having paid all past due payments.  RHS informed the
Borrowers that their account would not be reinstated in future if
it reaches foreclosure status again.  A true and correct copy of
the December 26, 2006 letter is attached hereto as Exhibit O.

25.  By letters dated November 15, 2007, which were
sent by certified mail, return receipt requested, and by first
class mail, RHS again informed the Borrowers that they were in
default on the Mortgage.  These letters advised the Borrowers
that the Mortgage would be foreclosed if satisfactory payment was
not received within thirty days of the notice.  True and correct
copies of the November 15, 2007 letters are attached hereto as
Exhibit P.

26.  By letters dated June 10, 2008, which were sent by
certified mail, return receipt requested, and by first class
mail, the United States Attorney's Office for the Southern
District of New York ("the USAO") informed the Borrowers that
they were in default on the Mortgage and that unless the mortgage
is paid in full by July 11, 2008, or other satisfactory payment
arrangements are made with the USAO, the USAO will be compelled

8

to institute a suit against them in the United States District Court to foreclose on the mortgage. True and correct copies of the June 10, 2008 letters are attached hereto as Exhibit Q.

27. Despite the demands for payment, the Borrowers have failed to make the installment payments required by the Note and the Mortgage, or otherwise made payments sufficient to render the loan current. On account of the Borrowers' default, the entire outstanding balance of principal and interest is now due.

28. The Borrowers further failed to make the necessary tax and/or insurance payments on the Mortgaged property, thereby requiring the United States to advance such payments to protect its interest.

29. As of August 29, 2008, Borrowers were justly indebted to the United States on the Note for the principal amount of $111,451.09, plus accrued interest in the amount of $9,584.01, plus subsidies in the amount of $32,437.19, plus uncollected late charges in the amount of $31.53, plus advances of $1,655.89. The total amount of the debt as of August 29, 2008 was $156,863.42. Interest continues to accrue on the principal balance at rate of 7.75% annually.

30. In order to protect its security interest, the United States may be compelled, during the pendency of this action, to pay taxes, assessments, water or sewer rates, water charges, insurance premiums, and any other charges affecting the

9

premises. The United States requests that any sums so paid be added to the sum otherwise due, be deemed secured by the Mortgage, and adjudged a valid lien on the premises herein described.

31. No other action has been commenced at law or otherwise for the recovery of the sum, or any part thereof, secured by the Note and Mortgage.

WHEREFORE, plaintiff, the United States of America, respectfully requests that the Court:

(a) enter judgment holding Linda Woody and Quincy Woody in default on the Note and Mortgage;

(b) adjudicate the amount due plaintiff on the Note and Mortgage;

(c) enter judgment ordering that the named defendants, and all other persons whose claims are subsequent to or recorded after the filing of notice of pendency of this action in the office of the Clerk of Orange County in the State of New York, be forever barred and foreclosed from all right, title, claim, lien or other interest in the Mortgaged Property;

(d) enter an order directing the foreclosure and sale of the Mortgaged Property with the proceeds to be first applied to pay the liens of taxing authorities entitled to priority, if any, and thereafter to amounts due plaintiff under the Note and

Mortgage, with interest to the date of payment, plus costs and

disbursements of this action; and

       (e) order such further relief as the Court may deem

just.

Dated:    New York, New York
          August 29, 2008

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States
                                    of America

By:  /s/ Li Yu
                                      LI YU
                                    Assistant United States Attorney
                                    86 Chambers Street
                                    New York, New York 10007
                                    Telephone: (212) 637-2734
                                    Facsimile: (212) 637-2687
                                    Email: li.yu@usdoj.gov

# Exhibit A

Form FmHA 1940-16
(Rev. 4-91)                    **PROMISSORY NOTE**

| TYPE OF LOAN | |
|---|---|
| RH-502 | 46-01 |

| STATE |
|---|
| NEW YORK |
| **COUNTY** |
| ORANGE |
| **CASE NO.** � |

Date <u>DECEMBER 21</u>, 19 <u>92</u>.

**FOR VALUE RECEIVED**, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____

_____ <u>MIDDLETOWN, NEW YORK</u> ,

**THE PRINCIPAL SUM OF** <u>EIGHTY-EIGHT THOUSAND, NINE HUNDRED AND 00/100--------------------</u>

**DOLLARS ($** <u>88,900.00</u> ), plus INTEREST on the UNPAID PRINCIPAL of

<u>SEVEN AND THREE QUARTER</u> **PERCENT (** <u>7.75</u> **%) PER ANNUM.**

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.    Principal and Interest payments shall be deferred. The interest accrued to _____, 19_____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.    Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____, 19_____, through _____, 19_____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.    Payments shall not be deferred. Principal and Interest shall be paid in <u>396</u> installments as indicated in the box below:

| | |
|---|---|
| **$** <u>624.00</u> | on <u>JANUARY 21</u>, 19 <u>93</u>, and |
| **$** <u>624.00</u> | thereafter on the <u>21st</u> of each <u>month</u> |

until the **PRINCIPAL** and **INTEREST** are fully paid except that the **FINAL INSTALLMENT** of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and **PAYABLE** <u>THIRTY-THREE</u> ( <u>33</u> ) **YEARS** from the **DATE** of this **NOTE**. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the pre-payment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit else-where to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and coopera-tive rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certifica-tion," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for prop-erty purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as a nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guar-anteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose accurate and truthful financial information may result in the termination of program assistance currently being received, and the denial of future program assistance under USDA's Debarment regulations, 7 CFR Part 3017.

Presentment, protest, and notice are hereby waived.

_Turner Woody_                           (SEAL)
WOODY, QUINCY          (BORROWER)

_Linda Woody_                            (SEAL)
WOODY, LINDA           (CO-BORROWER)

420 RAKOV ROAD

MAYBROOK, NEW YORK 12543

A Re-Amortization Agreement dated 7/21/00 in the principal sum of $92,931.11 has been given to modify the payment schedule of this note.

A Re-Amortization Agreement dated 12/21/01 in the principal sum of $94,071.36 has been given to modify the payment schedule of this note.

A Re-Amortization Agreement dated 3/21/05 in the principal sum of $118,186.02 has been given to modify the payment schedule of this note.

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 88,900.00 | 12/21/92 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ 88,900.00 | 12/21/92 |

# Exhibit B

*Position 5*

USDA-FmHA
Form FmHA 1927-1 NY
(Rev. 6-92)

## REAL ESTATE MORTGAGE FOR NEW YORK

THIS MORTGAGE, is made and entered into by ___QUINCY WOODY and LINDA WOODY___

residing in ___ORANGE___ County , whose post office address

is ___420 Rakov Road, Maybrook, New York 12543___

herein called "Borrower", and the United States of America, acting through Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and: *James Hanley Fed. Bldg., Rm 871, PO Box 7318 Syracuse, NY 13261-7318

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note", which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount Plus Non-Capitalized Interest | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 12/21/92 | $88,900.00 | 7.75% | 12/21/2024 |

(Non-capitalized interest only applies in the case of Farmer Program loans being serviced in accordance with 7 CFR Part 1951 Subpart S.)

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 as amended, or any other statute administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower:

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. §2001.

And the debt instruments executed at the time of loan closing constitutes an obligation on the part of the Government to disburse all funds at one time or in multiple advances, provided the funds are for purposes authorized by the Government at the time of loan closing. This obligatory commitment takes priority over any intervening liens or advances by other creditors regardless of the provisions of the State laws involved:

NOW, THEREFORE, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower hereby grants, bargains, sells, conveys, assigns, mortgages, and forever warrants unto the Government the following property, herein called "the Property" situated in the County of

___Orange___ , State of New York.

FmHA 1927-1 NY (Rev. 6-92)

ALL that certain plot, piece or parcel of land, situate, lying and being
in the Village of Maybrook, Town of Montgomery, County of Orange, State of
New York, known and designated as Lot #2.10 in Block J on a certain map titled
"Subdivision Plat Section One, Country Club Heights, Village of Maybrook, Town
of Montgomery, County of Orange and State of New York", dated September 9, 1972,
and revised on January 4, 1973, and filed in the Orange County Clerk's Office
on January 12, 1973, as Map No. 2921.

SUBJECT to and reserving to the grantor the right to grant an easement
to the Village of Maybrook 10 feet in width to be located running through the
rear yard of the demised premises on terms and in a location as may hereafter
be requested or required by the Village of Maybrook for ingress and egress of
fire department personnel and equipment.

SUBJECT TO THE TRUST FUND PROVISION OF SECTION 13 OF THE LIEN LAW.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

LIBER 4547 PAGE 81

(6)  To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)  To pay when due all taxes, liens, judgments, encumbrances, assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and the default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, and (c) enforce any and all other rights and remedies provided herein or by present or future law.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, with interest to the date of sale, (d) inferior liens of record required by law to be so paid or duly approved and allowed by court order or otherwise, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent dower, and curtesy.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial status, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial status, age or national origin.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to the excessive erosion of highly erodible land or to the conversion of wetlands to product an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Syracuse, New York 13210, and in the case of Borrower to the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

AND THAT, except to any extent that such construction conflicts with express provisions of this mortgage:

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

(25)  This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____21st_____ day of _____December_____, 19 _92_.

In the presence of

_____     _Quincy Woody_____ (SEAL)
                              Quincy Woody

_____     _Linda Woody_____ (SEAL)
                              Linda Woody

ACKNOWLEDGMENT

STATE C̶O̶R̶X̶X̶X̶X̶X̶X̶X̶ OF ____NEW YORK____ }
COUNTY OF ____ORANGE____            } ss:

On the ____21st____ day of ____December____, 19 _92_, before me, came

____Quincy Woody and Linda Woody____

to me known to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged to me that ____they____ executed the same for the purposes therein contained.

_____
                              Notary Public.

(SEAL)

My commission expires ____8/31/94____

JOHN F. MEEHAN
Notary Public, State of New York
Orange County
My Commission Expires 3/31/94

*U.S. Government Printing Office: 1992 — 656-885

LIBER 4547 PAGE 83

# Exhibit C

DEC 22 1992

FmHA Instruction 1951-I
Exhibit A

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Subsidy Repayment Agreement

Date of Note  12/21/92  Amount of Note  88,900.00  Date of mortgage  12/21/92

Date of Note  _____  Amount of Note  _____  Date of mortgage  _____

Type of assistance:                    1. Interest credit  /XXXX/
                                       2. Homeownership Assistance
                                          Program  /    /

Address of Property:  420 Rakov Road

                      Maybrook, New York 12543

            BORROWER:  QUINCY WOODY

         CO-BORROWER:  LINDA WOODY

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us). If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid.  The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

   (a)  Unpaid balance of loans secured by a prior mortgage as well as
   real estate taxes and assessments levied against the property which
   are due will be paid.

   (b)  Unpaid principal and interest owed on FmHA RH loans for the
   property and advances made by FmHA which were not subsidy and are
   still due and payable will be paid to the Government.

   (c)  I (we) will receive from the sale proceeds actual expenses
   incurred by me (us) necessary to sell the property.  These may include
   sales commissions or advertising cost, appraisal fees, legal and
   related costs such as deed preparation and transfer taxes.  Expenses
   incurred by me (us) in preparing the property for sale are not allowed
   unless authorized by the Government prior to incurring such expenses.
   Such expenses will be authorized only when FmHA determines such expenses
   are necessary to sell the property, or will likely result in a return
   greater than the expense being incurred.

   (d)  I (we) will receive the amount of principal paid off on the
   loan calculated at the promissory note interest rate.

   (e)  Any principal reduction attributed to subsidized interest
   calculations will be paid to the Government.

   (f)  I (we) will receive my original equity which is the difference
   between the market value of the security, as determined by the
   FmHA appraisal at the time the first loan subject to recapture of
   subsidy was made, and the amount of the FmHA loan(s) and any
   prior lien.  This amount is $2,100.00        and represents
   __2.3076__  percent of the market value of the security.  (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.)  The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g)  The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation.  The amount of
value appreciation to be paid to the Government, in repayment of
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h)  I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above.  I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i)  If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent.  In such cases it will be determined based
on the average interest rate paid by me (us).

(j)  If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent:_____.  This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt.  This percentage will be entered at the time I (we) sign this
agreement.

(k)  If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

FmHA Instruction 1951-I
Exhibit A
Page 4


7    When a FmHA RH loan is repaid by other than foreclosure, voluntary conveyance, or sale of property, the amount of subsidy to be repaid the Government will be determined in the same manner as described in paragraph 6 of this Exhibit but based on the appraised value determined by FmHA instead of sales price.  In such cases, the subsidy due the Government will remain a lien on the property until paid.  It must be paid upon non occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.


_____  Borrower
    WOODY, QUINCY
_____  Co-Borrower
    WOODY, Linda
    December 21, 1992
        Date signed


Accepted and Agreed to
By _____  (FmHA Official)

    _____  (Title)
        Co. Superviso_

    _____
        1/4/93
        Date


oOo

# Exhibit D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

JUL 21 1997

-------------------------------------------------------------X

IN RE:

    Quincy Woody and
    Linda L. Woody,

CHAPTER 7

                  Debtors.

CASE NO. ████████ ZB)

-------------------------------------------------------------X

## REAFFIRMATION - DECLARATION OF ATTORNEY

I, Michael L. Carey, Esq. of Jacobowitz and Gubits, Esqs., attorneys for the Debtors in the above entitled case, declare:

1.     I represented said Debtors during the course of negotiating the foregoing reaffirmation pursuant to the provisions of Section 524(c) of the Bankruptcy Code, between the Debtors and United States Department of Agricultary, Rural Development, a secured creditor.

2.     The said reaffirmation agreement was clearly explained by me to the Debtors, they are fully informed as to its contents and the consequences thereof, and they entered into said agreement voluntarily.

3.     I inquired to the Debtors as to their financial condition and to the best of my knowledge, information and belief, the agreement will not impose any undue hardship of the Debtors or a dependent of the Debtors.

Dated:  July 7, 1997

Signed _____
        Michael L. Carey, Esq.
        Jacobowitz and Gubits, Esqs.
        158 Orange Avenue
        Walden, New York  12586
        (914) 778-2121

W:\2917\1\PA4984.WPD

Form FmHA 460-10
Rev. 7-95

| KIND OF LOAN | |
|---|---|
| ☐ FO | ☒ [ ] |
| ☐ FO-NFE | ☐ RRH |
| ☐ SW (Ind.) | ☐ LH |
| ☐ RL | ☐ OL |
| ☐ EM | ☐ EO |
| ☐ OTHER | |

STATE
NEW YORK

COUNTY      JUL 21 1997
ORANGE

CASE NO.
▒▒▒▒▒▒7

LOAN CODE
46-01

SOURCE OF FUNDS
☒ INSURED    ☐ DIRECT

UNITED STATES DEPARTMENT OF AGRICULTURE

# NEW PROMISE TO PAY

For value received, the undersigned jointly and severally:

1.    Waive any defense the undersigned may have under the Bankruptcy Code (Title 11, U.S. Code), the Federal Statute of Limitations (28 U.S.C. #2415), or under any Federal or state insolvency law with respect to the indebtedness hereinafter described.

2.    Acknowledge liability for, reaffirm, and promise to pay to the United States of America, acting through the Consolidated Farm Service Agency or Rural Housing & Community Development Service, United States Department of Agriculture, or the Commodity Credit Corporation, an instrumentality of the United States of America, as the case may be, at the county office address set forth below, the total unpaid balance of the indebtedness incurred under the instruments of debt and related security instruments described as follows:

## PROMISSORY NOTES, ASSUMPTION AGREEMENTS OR
## OTHER INSTRUMENTS OF DEBT

| Instrument | Date | Executed By | Original Payee | Principal Amount |
|---|---|---|---|---|
| Promissory Note | December 21, 1992 | Quincy Woody<br>Linda Woody | United States of America<br>*Rural Development | $88,900.00 |

## MORTGAGES OR OTHER SECURITY INSTRUMENTS

| Instrument | Date | Executed By | Secured Party | Recording Data |
|---|---|---|---|---|
| Real Estate<br>Mortgage | December 21, 1992 | Quincy Woody<br>Linda Woody | United States of America<br>*Rural Development | Liber 4547<br>Page 80 |

*formerly known as the Farmers Home Administration

# Exhibit E

09/03/97  11:20  FAX 19143432630
USDA RD MIDTOWN
☑02

B18 (Official Form 18)
(6/91)

# United States Bankruptcy Court

*Ree . 9/3/97*

### Southern District of New York (Poughkeepsie)

In re

Quincy Woody, 
Linda L. Woody,

Bankruptcy Case No. 97-31629 (jeb)

*Awaiting Trustee Reports*

## DISCHARGE OF DEBTOR

It appears that a petition commencing a case under title 11, United States Code, was filed by or against the person named above on 5/28/97, that an order for relief was entered under chapter 7, and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court [*or* that a complaint objecting to discharge of the debtor was filed and, after due notice and hearing, was not sustained].

### IT IS ORDERED THAT:

1. The above-named debtor is released from all dischargeable debts.

2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:

   (a) debts dischargeable under 11 U.S.C. § 523;

   (b) unless heretofore or hereafter determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4), (6) and (15) of 11 U.S.C. § 523(a);

   (c) debts determined by this court to be discharged.

3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void in paragraph 2 above are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above-named debtor.

### BY THE COURT

Dated: _____8/27/97_____

_____Jeremiah E. Berk_____
United States Bankruptcy Judge

FORM DIS



# UNITED STATES BANKRUPTCY COURT
## Southern District of New York
### 176 Church Street
### Poughkeepsie, NY 12601-4104

IN RE:  Quincy Woody and Linda L. Woody                    CASE NO.:

AKA/DBA:

SSN/TAX ID:                                                CHAPTER: 7

# ORDER OF FINAL DECREE

The estate of the above-named debtor has been fully administered.

IT IS ORDERED THAT:

Charles E. Stewart III is discharged as Trustee of the estate of the above-named debtor and the bond is cancelled; and the chapter 7 case of the above-named debtor is closed.

Dated: September 10, 1997                    Jeremiah E. Berk , Bankruptcy Judge
                                             For the Court

cc - Form ord_final_decr

112155032

# Exhibit F

# REAMORTIZATION AGREEMENT

Account Number                                    Effective Date
███████████                                       July 21, 2000



The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $    88900.00, plus interest on the unpaid principal of
 7.75000% per year, executed by QUINCY WOODY _____ and
LINDA WOODY _____, (Borrower) dated  December 21, 1992
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $     92931.11.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  7.75000%
per annum at $    698.19 per month beginning    August 21, 2000 and on
the 21st day of each succeeding month until the principal
and interest are paid, except that the final installment of the
entire debt, if not paid sooner, will be due and payable on
 December 21, 2025.

If the outstanding loan balance prior to reamortization was reduced
by a payment which was later determined to be uncollectible, Rural
Housing Service will charge the account with an amount equal to the
uncollectible payments.  This amount is due and payable on the
effective date it is charged to the account and will accrue interest
at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

*K8000035902* L9211000

The funds shall be held by a federal agency, including Lender, or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits the Lender to make such charge. However, Lender may require borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made. The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

Borrower _____ Date 8/18/00

Borrower _____ Date 8/14/00

# Exhibit G

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**Centralized Servicing Center**
**P O BOX 66511**
**ST. LOUIS MO 63166**

March 29, 2001

Quincy Woody
Linda Woody
420 Rakov Rd
Maybrook, NY  12543-1156

RECEIVED

APR 02 2001

Re:  **Moratorium Approval**          CSC Account # ▮▮▮▮▮

Dear Homeowner(s):

Your request for moratorium assistance has been approved.  The moratorium will take effect with your **4/21/01** payment. This moratorium was granted due to one of the following reasons:

_____   Payment of unexpected and unreimbursed medical and/or funeral expenses

_X__   A reduction of at least 20 percent of repayment income

_____   Payment of unexpected and unreimbursed expenses resulting from damage to your home

_____   Executive Order by the President designating an emergency situation in the event of a national disaster

Please note that during the moratorium period your account will be reported to the Credit Bureau as delinquent due to an account adjustment.  Additionally, during the moratorium period, you are required to:

1. Notify the CSC when your circumstances have changed and you are able to resume making payments,

2. If applicable, pay an amount equal to your suspended payment toward unexpected and unreimbursed expenses resulting from medical/funeral expenses or damage to your home; and

3. Pay real estate taxes when due and maintain hazard insurance on the property.

On **10/20/01**, a review will be conducted of your account for compliance and to determine your continued eligibility for the moratorium.  If results of the review indicate that the circumstances for which the moratorium was granted still exists, the moratorium will continue; and, if applicable, you will be notified of the next review date.

**Important:  Failure to provide information requested for the review may warrant action by CSC to terminate the moratorium.**

Please remember that moratorium is a temporary suspension of the requirement for you to make regular monthly payments. A moratorium may be provided for up to two years; however, your continued eligibility for a moratorium will be determined by periodic reviews as described above. To minimize accumulated interest on your account, you should contact CSC at 1-800-349-5097, as soon as you are able to resume payments. Upon cancellation or expiration of the moratorium, arrangements must be made to resume payments and resolve any delinquency. The delinquency can be paid in a lump sum or over the remaining life of the loan.

For questions regarding your account, please call the Customer Service Department toll free at 1-800-414-1226 or TDD 1-800-438-1832, 7:00 a.m. to 5:00 p.m. Monday through Friday, Central Standard Time. With a touch-tone telephone, the Voice Response Unit (VRU) can provide automated confidential account information seven days per week outside of normal business hours. Please refer to your account number when you write or call us.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit recipients on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided the recipient has the capacity to enter into a binding contract), or because all or part of the recipient's income derives from any public assistance program, under the Consumer Credit Protection Act. The Federal Agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C.

Sincerely,

Special Assistance Section
Risk Management Branch

# Exhibit H

### UNITED STATES DEPARTMENT OF AGRICULTURE
**Centralized Servicing Center**
**P O Box 66511**
**St. Louis, Mo.   63166**

10/26/01

Quincy Woody
Linda Woody
420 Rakov Rd
Maybrook, NY  12543-1156

**RE: Moratorium Cancellation**          **CSC Account** ▓▓▓▓▓

Dear Homeowner(s):

We will discontinue with a moratorium on your loan payments for the following reason(s):

\_\_\_\_    As per your request.
\_X\_\_    Your circumstances have changed and you no longer qualify for moratorium assistance.
\_\_\_\_    You are not presently occupying the property and the dwelling has not been deemed uninhabitable.
\_\_\_\_    You have not been paying the expenses for which you were granted a moratorium.
\_\_\_\_    You did not return the moratorium review package.

We are canceling your moratorium and may reamortize your loan.  This process includes all delinquent accumulated amounts and allows your loan to be put back on schedule. Your account will no longer be delinquent. Once the actual reamortization is completed, you will be notified of your new installment amount.

For questions regarding your account, please call our Customer Service Department toll free at 1-800-414-1226 or TDD 1-800-438-1832, from 7:00 a.m. to 5:00 p.m., Monday through Friday, Central  Time.  With a touch tone telephone, the Voice Response Unit (VRU) can provide automated confidential account information, seven days per week, outside of normal business hours.  Please refer to your account number when you write or call us. You also have the right to request reconsideration, mediation, or an appeal.  See attachment for requesting any of these options.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.   The Federal Agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

Sincerely,

Special Assistance Section
Risk Management Branch

# Exhibit I

# REAMORTIZATION AGREEMENT

Account Number                    Effective Date
                                     December 21, 2001



The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $    88900.00, plus interest on the unpaid principal of
   7.75000% per year, executed by QUINCY WOODY_____ and
LINDA WOODY_____, (Borrower) dated  December 21, 1992
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $    94071.36.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  7.75000%
per annum at $     720.36 per month beginning  January 21, 2002 and on
the 21st day of each succeeding month until the principal
and interest are paid, except that the final installment of the
entire debt, if not paid sooner, will be due and payable on
 December 21, 2025.

If the outstanding loan balance prior to reamortization was reduced
by a payment which was later determined to be uncollectible, Rural
Housing Service will charge the account with an amount equal to the
uncollectible payments.  This amount is due and payable on the
effective date it is charged to the account and may accrue interest
at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

The funds shall be held by a federal agency, including Lender, or in an institution whose deposits are insured by a federal agency, instrumentality, or entity.  Lender shall apply funds to pay the Escrow Items.  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits the Lender to make such charge.  However, Lender may require borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made.  The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency.  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.  If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_Jimmy Woody_ Date _1/4/02_
Borrower

_Linda Woody_ Date _1/4/02_
Borrower

# Exhibit J



| **USDA** | United States<br>Department of<br>Agriculture | Rural<br>Development | Rural Housing<br>Service | Centralized<br>Servicing<br>Center | PO Box 66511<br>St. Louis, MO<br>63166 |
|---|---|---|---|---|---|

**JUNE 04, 2003**

**QUINCY WOODY**
**LINDA WOODY**
**420 RAKOV RD**
**MAYBROOK**          **NY 12543-1156***

**Re:  Moratorium Approval**          **CSC Acc** ▓▓▓▓▓▓

Dear Homeowner(s):

Your request for moratorium assistance has been approved.  The moratorium will take effect with your **06/21/03** payment. This moratorium was granted due to one of the following reasons:

_____    Payment of unexpected and unreimbursed medical and/or funeral expenses

__X___    A reduction of at least 20 percent of repayment income

_____    Payment of unexpected and unreimbursed expenses resulting from damage to your home

_____    Executive Order by the President designating an emergency situation in the
              event of a national disaster

Please note that during the moratorium period your account will be reported to the Credit Bureau as delinquent due to an account adjustment.  Additionally, during the moratorium period, you are required to:

1.  Notify the CSC when your circumstances have changed and you are able to resume making
    payments,

2.  If applicable, pay an amount equal to your suspended payment toward unexpected and
    unreimbursed expenses resulting from medical/funeral expenses or damage to your home;
    and

3.  Pay real estate taxes when due and maintain hazard insurance on the property.

On **12/21/03**, a review will be conducted of your account for compliance and to determine your continued eligibility for the moratorium.  If results of the review indicate that the circumstances for which the moratorium was granted still exists, the moratorium will continue; and, if applicable, you will be notified of the next review date.

**Important:  Failure to provide information requested for the review may warrant action by**

USDA Rural Development is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to: USDA, Director, Office of Civil Rights,
Washington, DC  20250-9410

 **USDA** | United States Department of Agriculture | Rural Development | Rural Housing Service | Centralized Servicing Center | PO Box 66511 St. Louis, MO 63166

**CSC to terminate the moratorium.**

Please remember that moratorium is a temporary suspension of the requirement for you to make regular monthly payments. A moratorium may be provided for up to two years; however, your continued eligibility for a moratorium will be determined by periodic reviews as described above. To minimize accumulated interest on your account, you should contact CSC at 1-800-349-5097, as soon as you are able to resume payments. Upon cancellation or expiration of the moratorium, arrangements must be made to resume payments and resolve any delinquency. The delinquency can be paid in a lump sum or over the remaining life of the loan.

For questions regarding your account, please call the Customer Service Department toll free at 1-800-414-1226 or TDD 1-800-438-1832, 7:00 a.m. to 5:00 p.m. Monday through Friday, Central Standard Time. With a touch-tone telephone, the Voice Response Unit (VRU) can provide automated confidential account information seven days per week outside of normal business hours. Please refer to your account number when you write or call us.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); and because all or parts of the applicant's income is derived from any public assistance program; or because the applicant has in good faith, exercised any rights under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is the Federal Trade Commission. If a person believes he or she was denied assistance in violation of this law, they should contact the Federal Trade Commission, Washington, DC 20580.

Sincerely,

Loss Mitigation Section
Risk Management Branch

USDA Rural Development is an Equal Opportunity Lender, Provider, and Employer. Complaints of discrimination should be sent to: USDA, Director, Office of Civil Rights, Washington, DC 20250-9410

# Exhibit K

 **United States Department of Agriculture**   Rural Development   Rural Housing Service   Centralized Servicing Center   PO Box 66511 St. Louis, MO 63166

NOVEMBER 25, 2003

QUINCY WOODY
LINDA WOODY
420 RAKOV RD
MAYBROOK          NY 12543-1156

RE: Moratorium Cancellation        CSC Account #5171072

Dear Homeowner(s):

We will discontinue with a moratorium on your loan payments for the following reason(s):

_ _        As per your request.

_         Your circumstances have changed and you no longer qualify for moratorium
          assistance. Borrower started to work again.

____      You are not presently occupying the property and the dwelling has not been
          deemed uninhabitable.

____      You have not been paying the expenses for which you were granted a
          moratorium.

X__       You did not return the moratorium review package on time.

We are canceling your moratorium and may reamortize your loan. This process includes all
delinquent accumulated amounts and allows your loan to be put back on schedule. Your account
will no longer be delinquent. Once the actual reamortization is completed, you will be notified of
your new installment amount.

For questions regarding your account, please call our Customer Service Department toll free at 1-
800-414-1226 or TDD 1-800-438-1832, from 7:00 a.m. to 5:00 p.m., Monday through Friday,
Central Time. With a touch tone telephone, the Voice Response Unit (VRU) can provide
automated confidential account information, seven days per week, outside of normal business
hours. Please refer to your account number when you write or call us. You also have the right to
request reconsideration, mediation, or an appeal. See attachment for requesting any of these
options.

USDA Rural Development is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to: USDA, Director, Office of Civil Rights,
Washington, DC  20250-9410

 **USDA**

| United States Department of Agriculture | Rural Development | Rural Housing Service | Centralized Servicing Center | PO Box 66511 St. Louis, MO 63166 |

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); and because all or parts of the applicant's income is derived from any public assistance program; or because the applicant has in good faith, exercised any rights under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is the Federal Trade Commission. If a person believes he or she was denied assistance in violation of this law, they should contact the Federal Trade Commission, Washington, DC 20580.

Sincerely,

Loss Mitigation Section
Risk Management Branch

USDA Rural Development is an Equal Opportunity Lender, Provider, and Employer. Complaints of discrimination should be sent to: USDA, Director, Office of Civil Rights, Washington, DC 20250-9410

# Exhibit L

## REAMORTIZATION AGREEMENT

Account Number 

Effective Date
March 21, 2005



The United States of America, acting through the Rural Housing Service, United States Department of Agriculture (Lender), is the owner and holder of a promissory note or assumption agreement (Note) in the principal sum of $    88900.00, plus interest on the unpaid principal of    7.75000% per year, executed by QUINCY WOODY_____ and LINDA WOODY_____, (Borrower) dated  December 21,  1992 and payable to the order of the Lender.  The current outstanding balance includes unpaid principal, accrued unpaid interest, unpaid advances and fees.  The total outstanding balance is $   118186.02.

In consideration of the reamortization of the note or assumption agreement and the promises contained in this agreement, the outstanding balance is capitalized and is now principal to be repaid at  7.75000% per annum at $     955.66 per month beginning    April 21, 2005 and on the 21st day of each succeeding month until the principal and interest are paid, except that the final installment of the entire debt, if not paid sooner, will be due and payable on  December 21, 2025.

If the outstanding loan balance prior to reamortization was reduced by a payment which was later determined to be uncollectible, Rural Housing Service will charge the account with an amount equal to the uncollectible payments.  This amount is due and payable on the effective date it is charged to the account and may accrue interest at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower shall pay to lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes and assessments which may attain priority over Lender's mortgage or deed of trust (Security Instrument) as a lien on the secured property described in the Security Agreement (Property); (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any.  These items are called "Escrow Items."  Lender may, at any time, collect and hold funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan, may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law or federal regulation that applies to the funds sets a lesser amount.  If so, Lender may, at any time, collect and hold funds in an amount not to exceed the lesser amount.  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held by a federal agency, including Lender, or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits the Lender to make such charge. However, Lender may require borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made. The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_Quincy Woody_ Date 4/6/05
Borrower

_Linda Woody_ Date 4/6/05
Borrower

# Exhibit M

# Exhibit N



**United States**
**Department of**
**Agriculture**

**Rural Housing Service**
Centralized Servicing Center
P. O. Box 66506
St. Louis, MO 63166

12/02/05

QUINCY WOODY
LINDA WOODY
420 RAKOV RD
MAYBROOK           NY 12543-1156

602

RE:   Account Number:   ███████

CONFIRMATION OF DELINQUENCY WORKOUT AGREEMENT

Dear Homeowner:

This letter confirms the agreement made to bring your account current. As of 12/02/05 , your account is $   2,084.37 past due. This agreement requires that you make a regular monthly payment plus an additional payment of $        86.85 each month beginning 12/21/05 until your account is brought current. This agreement includes a down payment of $      0.00    prior to your first plan payment. As long as the payments are paid according to this schedule, your account will be current in   24 months.

If you fail to make payments as agreed on this payment schedule, this agreement will be automatically become void and the Rural Housing Service will take immediate action to remedy this delinquency. This could include foreclosure action.

If you have been previously notified of a personal check restriction on your account, your payment under this agreement must also be in the form of a certified check, Cashier's check or money order payable to USDA-RHS.

Despite this agreement, your account is still considered past due. Late fees assessed during this plan will be waived if you keep this agreement and payments are made on schedule.

You will receive a monthly billing statement which will reflect the total of your regular payment and your agreement amount. If your regular payment changes before your account is current, your billing statement may not reflect the correct amount. If you need to verify the correct payment amount or need other assistance, call one of our loan counselors toll free at 1-800-793-8861. Please be sure to refer to your RHS account number listed at the top of this letter if you need to contact us by telephone or in writing.

Sincerely,

Customer Service Collections Branch
Rural Housing Service - Centralized Servicing Center

(Mire el reverso para traduccion Espanol)



USDA is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to: USDA, Director,
Office of Civil Rights, Washington, DC 20250-9410


1234567890123 LDWADDWA



**United States
Department of
Agriculture**

**Rural Development**
Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
*(800) 793-8861 (Voice)*
*(800) 438-1832 (TDD/TTY Hearing Impaired Only) or*
*(314) 206-2214 (FAX)*

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

QUINCY WOODY                                    0005171072   12000
420 RAKOV RD
MAYBROOK          NY 12543-1156            SCP

SUBJECT:  NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF
          THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY
          TO HAVE A HEARING CONCERNING THIS ACTION

Dear  QUINCY WOODY

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption
agreement(s) which evidence the loan(s) received by you from the United States of America, acting
through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers
Home Administration, is now declared immediately due and payable and demand is hereby made on
you to pay this entire indebtedness.  If payment in full is not made as demanded herein, the RHS
intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness
by foreclosure of its lien(s) on your house.

| Account Number(s) | Date of Instruments | Amount |
|---|---|---|
| 0005171072 | 12/21/92 | 88900.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the
above-described instrument(s).  The reason(s) for the acceleration of your indebtedness is (are)
as follows:

**MONETARY DEFAULT**

The balance of the account is $  114797.04        unpaid principal and
$ 3576.37          unpaid interest, as of  11/13/06 , plus additional interest accruing at the rate
of  $24.3747           per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)

•F3000001201• L9051SCP

Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**



> USDA-Rural Development
> P. O. Box 371419
> Pittsburgh, PA 15250-7419

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than   11/28/06  . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s);  (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.



You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract).  You cannot be denied a loan because all or a part of your income is from a public assistance program.  If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act.  The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time.  Please refer to your Account number when you write or call us.  Thank you.

UNITED STATES OF AMERICA
BY

*Thomas B. Herron*

Thomas B. Herron
Branch Chief
CSC - Chief, Default Management Branch,
Rural Development
United States Department of Agriculture

Date:   11/13/06
Attachment
CC:   State Office

This letter was mailed certified and regular mail on   11/13/06   .

# APPEALS RIGHTS ATTACHMENT

If you believe the decision described in the attached letter or the facts used in this case are in error, you may pursue any or all of the following three options.

## OPTION 1 - Reconsideration

If you have questions concerning this decision or the facts used in making it and desire further explanation, you may write this office to request reconsideration. There is no cost for reconsideration. This written request must be received no later than 15 calendar days from the date of the attached letter. You must present any new information, evidence and/or possible alternatives along with your request. You may skip this informal process and select one of the following two options. If you do, you will automatically waive your right to reconsideration.

## OPTION 2 - Mediation

You have the right to request mediation or other forms of alternative dispute resolution (ADR) of the issues in this decision. *You may have to pay for the cost of mediation.* If you request mediation or ADR, and resources are available, Rural Development will participate in the mediation or ADR process. To request mediation or ADR, you must write the Rural Development State Director (see reverse side). The written notice must be postmarked by you no later than 30 calendar days from the date of this letter. Mediation and ADR do not take the place of, or limit your rights to, an appeal to the National Appeals Division (NAD); however, a NAD appeal hearing would take place after mediation. You may skip mediation and request an appeal hearing. However, in doing so, you will automatically waive your rights to mediation and reconsideration.

## OPTION 3 - Request an Appeal

You may request an appeal hearing by the National Appeals Division (NAD) rather than reconsideration or mediation. There is no cost for an appeal. A request for an appeal must be postmarked within 30 days from the date on which you received this letter. You must write the Assistant Director of the NAD (see reverse side).

The appeal hearing will generally be held within 45 days of the receipt of your request.

You or your representative or counsel may contact this office anytime during regular office hours in the 10 days following the receipt of your request for a hearing to obtain copies of relevant, non-confidential material on your account. Your representative or counsel should have your written authorization to represent you and review your account records.

You may request a teleconference hearing or a personal meeting with a Hearing Officer. You may have a representative or counsel with you at these hearings and may present your own witnesses. At any time before the scheduled hearing you may also request that the Hearing Officer make a decision without a hearing. If you do, the Hearing Officer's decision will be based on the Rural Development file, any written statements or evidence you may provide and any additional information the Hearing Officer deems necessary.

To request reconsideration,  send a written request to:

UNITED STATES DEPARTMENT OF AGRICULTURE
CENTRALIZED SERVICING CENTER
DEFAULT MANAGEMENT BRANCH, FC 214
1520 MARKET STREET
ST. LOUIS, MO 63166

To request mediation, send a written request to the state office
address below, with a copy to the address above.

NEW YORK STATE OFFICE
USDA – Rural Development
Galleries of Syracuse
441 South Salina Street, Suite 357
Syracuse, NY 13202-2425

To request an appeal, send a written request with a copy of the
decision letter to the address below:

U. S. DEPARTMENT OF AGRICULTURE
National Appeals Division
Eastern Regional Office
8909 Purdue Road, Suite 240
Indianapolis, Indiana 46268
1-800-541-0457



**Rural Development**
Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
(800) 793-8861 (Voice)
(800) 438-1832 (TDD/TTY Hearing Impaired Only) or
(314) 206-2214 (FAX)

**United States
Department of
Agriculture**

*Committed to the future of rural communities*



<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

LINDA WOODY                                      0005171072   12000
420 RAKOV RD
MAYBROOK        NY 12543-1156                    SCP

SUBJECT:  NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF
          THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY
          TO HAVE A HEARING CONCERNING THIS ACTION

Dear  QUINCY WOODY

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption
agreement(s) which evidence the loan(s) received by you from the United States of America, acting
through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers
Home Administration, is now declared immediately due and payable and demand is hereby made on
you to pay this entire indebtedness.  If payment in full is not made as demanded herein, the RHS
intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness
by foreclosure of its lien(s) on your house.

| <u>Account Number(s)</u> | <u>Date of Instruments</u> | <u>Amount</u> |
|---|---|---|
| 0005171072 | 12/21/92 | 88900.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the
above-described instrument(s).  The reason(s) for the acceleration of your indebtedness is (are)
as follows:
          **MONETARY DEFAULT**

The balance of the account is $ 114797.04        unpaid principal and
$ 3576.37        unpaid interest, as of  11/13/06 , plus additional interest accruing at the rate
of $ 24.3747        per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)

•F30000001201• L9061SCP

Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**



> USDA-Rural Development
> P. O. Box 371419
> Pittsburgh, PA 15250-7419

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than  11/28/06  . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.



You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA
BY

*Thomas B. Herron*

Thomas B. Herron
Branch Chief
CSC - Chief, Default Management Branch,
Rural Development
United States Department of Agriculture

Date: 11/13/06
Attachment
CC: State Office

This letter was mailed certified and regular mail on 11/13/06 .

# APPEALS RIGHTS ATTACHMENT

If you believe the decision described in the attached letter or the facts used in this case are in error, you may pursue any or all of the following three options.

## OPTION 1 - Reconsideration

If you have questions concerning this decision or the facts used in making it and desire further explanation, you may write this office to request reconsideration. There is no cost for reconsideration. This written request must be received no later than 15 calendar days from the date of the attached letter. You must present any new information, evidence and/or possible alternatives along with your request. You may skip this informal process and select one of the following two options. If you do, you will automatically waive your right to reconsideration.

## OPTION 2 - Mediation

You have the right to request mediation or other forms of alternative dispute resolution (ADR) of the issues in this decision. *You may have to pay for the cost of mediation.* If you request mediation or ADR, and resources are available, Rural Development will participate in the mediation or ADR process. To request mediation or ADR, you must write the Rural Development State Director (see reverse side). The written notice must be postmarked by you no later than 30 calendar days from the date of this letter. Mediation and ADR do not take the place of, or limit your rights to, an appeal to the National Appeals Division (NAD); however, a NAD appeal hearing would take place after mediation. You may skip mediation and request an appeal hearing. However, in doing so, you will automatically waive your rights to mediation and reconsideration.

## OPTION 3 - Request an Appeal

You may request an appeal hearing by the National Appeals Division (NAD) rather than reconsideration or mediation. There is no cost for an appeal. A request for an appeal must be postmarked within 30 days from the date on which you received this letter. You must write the Assistant Director of the NAD (see reverse side).

The appeal hearing will generally be held within 45 days of the receipt of your request.

You or your representative or counsel may contact this office anytime during regular office hours in the 10 days following the receipt of your request for a hearing to obtain copies of relevant, non-confidential material on your account. Your representative or counsel should have your written authorization to represent you and review your account records.

You may request a teleconference hearing or a personal meeting with a Hearing Officer. You may have a representative or counsel with you at these hearings and may present your own witnesses. At any time before the scheduled hearing you may also request that the Hearing Officer make a decision without a hearing. If you do, the Hearing Officer's decision will be based on the Rural Development file, any written statements or evidence you may provide and any additional information the Hearing Officer deems necessary.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)

To request reconsideration,  send a written request to:

UNITED STATES DEPARTMENT OF AGRICULTURE
CENTRALIZED SERVICING CENTER
DEFAULT MANAGEMENT BRANCH, FC 214
1520 MARKET STREET
ST. LOUIS, MO 63166

To request mediation, send a written request to the state office
address below, with a copy to the address above.

NEW YORK STATE OFFICE
USDA - Rural Development
Galleries of Syracuse
441 South Salina Street, Suite 357
Syracuse, NY 13202-2425

To request an appeal, send a written request with a copy of the
decision letter to the address below:

U. S. DEPARTMENT OF AGRICULTURE
National Appeals Division
Eastern Regional Office
8909 Purdue Road, Suite 240
Indianapolis, Indiana 46268
1-800-541-0457

# Exhibit O



| USDA | United States Department of Agriculture | Rural Development | Rural Housing Service | Centralized Servicing Center | P.O. Box 66827 St. Louis, MO 63166 |

*566*

December 26, 2006

QUINCY WOODY
LINDA WOODY
420 RAKOV RD
MAYBROOK      NY     12543-1156


RE:  Reinstating Account:  Account Number - 5171072


Dear Borrower:

After careful consideration and cooperation from you, Rural Development will reinstate your account and cease foreclosure action.  You have paid your account current, provided proof of insurance and paid taxes.

Your next regular payment is due January 21, 2007.  All future payments and loan obligations must be on time.

Rural Development will not reinstate your account in the future if your account again reaches a foreclosure status.  If you are having any problems making your payments, contact Centralized Servicing Center at 1-800-793-8861 to see if assistance is available.  Our goal is to ensure you an opportunity to be a successful home owner.

If you have any questions, please call us.


Sincerely,



Risk Management Branch
Centralized Servicing Center


Rural Development Agencies replace the Farmers Home Administration, Rural Development Administration and the Rural Electrification Administration.  Rural Development Agencies are Equal Opportunity Lenders. Complaints of discrimination should be sent to:  Secretary of Agriculture, Washington, DC  20250.

# Exhibit P



**Committed to the future of rural communities**

*United States
Department of
Agriculture*

*Rural Development*
*Centralized Servicing Center*
P.O. Box 66827
St. Louis, MO 63166
(800) 793-8861 (Voice)
(800) 438-1832 (TDD/TTY Hearing Impaired Only) or
(314) 206-2214 (FAX)

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

```
QUINCY WOODY
420 RAKOV RD
MAYBROOK           NY 12543-1156
```

SUBJECT:  NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF
THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR  OPPORTUNITY
TO HAVE A HEARING CONCERNING THIS ACTION

Dear   QUINCY WOODY

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption
agreement(s) which evidence the loan(s) received by you from the United States of America, acting
through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers
Home Administration, is now declared immediately due and payable and demand is hereby made on
you to pay this entire indebtedness.  If payment in full is not made as demanded herein, the RHS
intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness
by foreclosure of its lien(s) on your house.

| <u>Account Number(s)</u> | <u>Date of Instruments</u> | <u>Amount</u> |
|---|---|---|
| ~~0005151023~~ | 12/21/92 | 88900.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the
above-described instrument(s).  The reason(s) for the acceleration of your indebtedness is (are)
as follows:

**MONETARY DEFAULT**

The balance of the account is $  111901.09          unpaid principal and
$ 2811.43          unpaid interest, as of  11/15/07, plus additional interest accruing at the rate
of  $ 23.7598          per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)

*56000000902* L9051SSP

You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA
BY

Thomas B. Herron
Branch Chief
CSC - Chief, Default Management Branch,
Rural Development
United States Department of Agriculture

Date:    11/15/07
Attachment
CC:    State Office

This letter was mailed certified and regular mail on    11/15/07 .

Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**

> USDA-Rural Development
> P.O. Box 790170
> St. Louis, MO 63179-0170

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than   11/30/07  . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING -** If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.



**Rural Development**
Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
(800) 793-8861 (Voice)
(800) 438-1832 (TDD/TTY Hearing Impaired Only) or
(314) 206-2214 (FAX)

**United States
Department of
Agriculture**

Committed to the future of rural communities

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

LINDA WOODY
420 RAKOV RD
MAYBROOK          NY 12543-1156

SUBJECT:  NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF
          THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY
          TO HAVE A HEARING CONCERNING THIS ACTION

Dear  LINDA WOODY

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you from the United States of America, acting through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers Home Administration, is now declared immediately due and payable and demand is hereby made on you to pay this entire indebtedness.  If payment in full is not made as demanded herein, the RHS intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness by foreclosure of its lien(s) on your house.

| <u>Account Number(s)</u> | <u>Date of Instruments</u> | <u>Amount</u> |
|---|---|---|
| ▆▆▆▆▆▆ | 12/21/92 | 88900.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instrument(s).  The reason(s) for the acceleration of your indebtedness is (are) as follows:

          **MONETARY DEFAULT**

The balance of the account is $  111901.09          unpaid principal and
$ 2811.43          unpaid interest, as of  11/15/07, plus additional interest accruing at the rate
of $ 23.7598          per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

Web: http://www.rurdev.usda.gov
"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20250-9410 or call (866) 632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202) 720-8046 (FAX)

*56000001002* L9051SSP

You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA
BY

Thomas B. Herron
Branch Chief
CSC - Chief, Default Management Branch,
Rural Development
United States Department of Agriculture

Date:    11/15/07
Attachment
CC:    State Office

This letter was mailed certified and regular mail on    11/15/07 .

Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**

USDA-Rural Development
P.O. Box 790170
St. Louis, MO 63179-0170

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than   11/30/07  . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s);  (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.

USDA RURAL DEVELOPMENT
CSC
1520 MARKET STREET
FC-214 (ACCELERATIONS)
ST. LOUIS, MO
63103-2960

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)

X

B. Received By: *(Please Print Clearly)*

C. Date of Delivery

D. Addressee's Address *(If Different From Address Used by Sender.)*

Secondary Address / Suite / Apt. / Floor  *(Please Print Clearly)*

Delivery Address

City          State      ZIP + 4 Code

PS Form 3800,6/02

**CERTIFIED MAIL**

Article Addressed To:

QUINCY WOODY
420 RAKOV RD
MAYBROOK NY  12543-1156

RETURN RECEIPT REQUESTED

7104 8996 0737 0017 9497

USDA RURAL DEVELOPMENT
CSC
1520 MARKET STREET
FC-214 (ACCELERATIONS)
ST. LOUIS, MO
63103-2960

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature: ( ☐ Addressee or ☐ Agent)

X

B. Received By: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender.)

Secondary Address / Suite / Apt. / Floor    (Please Print Clearly)

Delivery Address

City        State        ZIP + 4 Code

PS Form 3800, 6/02

**CERTIFIED MAIL**

Article Addressed To:

LINDA WOODY
420 RAKOV RD
MAYBROOK NY 12543-1156

RETURN RECEIPT REQUESTED

7104 8996 0737 0017 9459

# Exhibit Q



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

June 10, 2008

**CERTIFIED MAIL**
**AND FIRST CLASS MAIL**

Quincy Woody
420 Rakov Road
Maybrook, New York 12543-1156

Re: **NOTICE OF INTENT TO FORECLOSE MORTGAGE**

        Mortgaged Premises: 420 Rakov Road, Maybrook, New York

Dear Mr. Woody:

        I am the Assistant United States Attorney assigned to
represent the Rural Housing Service of the United States
Department of Agriculture ("USDA") with regard to collection on
the above-referenced mortgage.  You have breached the terms of
the mortgage and promissory note by failing to make payments as
required under the note.  USDA has referred this matter to this
Office for the purpose of instituting a suit to collect debts
owed to the United States after administrative efforts have
failed.

        The purpose of this letter is to notify you that unless
the mortgage is paid in full by July 11, 2008, or you make other
satisfactory payment arrangements with this Office, we will be
compelled to institute a suit against you in the United States
District Court to foreclose on the mortgage.

        The amount required to satisfy the account, as of June
3, 2008, is $153,100.59.  Interest continues to accrue on the
principal balance at the rate of 7.75% annually.  Your certified
check or money order should be made payable to the Treasury of
the United States and mailed to this Office by July 11, 2008.

Please contact me if you have any questions.

                    Very truly yours,

                    MICHAEL J. GARCIA
                    United States Attorney for the
                    Southern District of New York


          By:    _____
                    LI YU
                    Assistant United States Attorney
                    Tel.:  (212) 637-2734
                    Fax:   (212) 637-2686
                    E-mail: li.yu@usdoj.gov

-2-



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd Floor*
*New York, New York  10007*

June 10, 2008

**CERTIFIED MAIL**
**AND FIRST CLASS MAIL**

Linda Woody
420 Rakov Road
Maybrook, New York 12543-1156

Re: **NOTICE OF INTENT TO FORECLOSE MORTGAGE**

Mortgaged Premises: 420 Rakov Road, Maybrook, New York

Dear Mrs. Woody:

I am the Assistant United States Attorney assigned to represent the Rural Housing Service of the United States Department of Agriculture ("USDA") with regard to collection on the above-referenced mortgage.  You have breached the terms of the mortgage and promissory note by failing to make payments as required under the note.  USDA has referred this matter to this Office for the purpose of instituting a suit to collect debts owed to the United States after administrative efforts have failed.

The purpose of this letter is to notify you that unless the mortgage is paid in full by July 11, 2008, or you make other satisfactory payment arrangements with this Office, we will be compelled to institute a suit against you in the United States District Court to foreclose on the mortgage.

The amount required to satisfy the account, as of June 3, 2008, is $153,100.59.  Interest continues to accrue on the principal balance at the rate of 7.75% annually.  Your certified check or money order should be made payable to the Treasury of the United States and mailed to this Office by July 11, 2008.

Please contact me if you have any questions.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

By: _____

LI YU
Assistant United States Attorney
Tel.:  (212) 637-2734
Fax:   (212) 637-2686
E-mail: li.yu@usdoj.gov

-2-

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Linda Woody
420 Rakov Rd
Maybrook, NY
12543

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X _Quincy Woody_   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
Q Woody   11/9/05

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7003 2260 0000 4028 2459

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

NEW YORK NY 100

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Quincy Woody
420 Rakov Rd
Maybrook, NY 12543

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X _Quincy Woody_   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
Q Woody   11/9/05

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7003 2260 0000 4028 2442

PS Form 3811, February 2004   Domestic Return Receipt